UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Rosco, Inc.,

                    Plaintiff,              CV-96-5658 (CPS)

        - against -                         MEMORANDUM
                                            OPINION AND ORDER
Mirror Lite Co.,

                    Defendant.

----------------------------------------X

SIFTON, Senior Judge.

        In 1996, Rosco, Inc., brought this action against Mirror

Lite asserting claims of design patent infringement, trade dress

infringement, false designation of origin, tortious interference

with business relationships, misrepresentation in violation of 15

U.S.C. § 1125(a), and common law trademark infringement.  In

addition to damages, the complaint sought declaratory and

injunctive relief pursuant to 29 U.S.C. §§ 2201 and 2202.  Mirror

Lite asserted a counterclaim of patent infringement in violation

of 15 U.S.C. § 1125(a).

        The matter was tried before the undersigned sitting without

a jury between March 6 and March 10, 2000.  After appeal to the

Federal Circuit and remand for determination of infringement,

Mirror Lite has filed the motion presently before the Court

seeking a finding of infringement of its '984 patent.  For the

reasons that follow, I find that Rosco has infringed upon Mirror

Lite's '984 patent.  What follows sets forth the finding of facts and conclusions of law on which this decision is based as required by Rule 52(a) of the Federal Rules of Civil Procedure.


<u>Procedural Background</u>

Rosco's '357 design patent relates to an oval, highly convex cross-view mirror with a black, flat metal backing.  Rosco applied for this patent in April of 1992, and the patent issued in April of 1994.  Mirror Lite's '984 utility patent relates to an oval cross-view mirror with a varying radius of curvature along the major axis of the convex ellipsoid mirror lens.  Mirror Lite applied for this patent in September of 1992, and the patent issued in December of 1996.

In its complaint, Rosco sought a declaratory judgment that all claims of Mirror Lite's '984 patent were invalid and unenforceable due to Mirror Lite's inequitable conduct in procuring the patent and a finding that Mirror Lite infringed its '357 patent.  Mirror Lite filed a counterclaim alleging that Rosco infringed upon the '984 patent.  At trial, Mirror Lite contended that Rosco's patent was invalid as functional and therefore not infringed.

After a bench trial, I held in relevant part that Rosco's '357 patent was invalid as functional and obvious pursuant to 35

U.S.C. § 103.[1]  I also found Mirror Lite's patent invalid under 35 U.S.C. § 102(e)[2] and (g).[3]  Accordingly, I did not reach the merits of Mirror Lite's patent infringement claim.

The Federal Circuit reversed the holdings that both Rosco and Mirror Lite's patents were invalid.  The Court remanded in relevant part for consideration of: 1) whether Mirror Lite had proven by clear and convincing evidence that Rosco's patent was invalid under 35 U.S.C. § 103; 2) whether Mirror Lite had infringed Rosco's patent; 3) whether Mirror Lite's patent was invalid under 35 U.S.C. §§ 102(a),[4] (f), and 103; 4) whether Mirror Lite's patent was unenforceable due to inequitable conduct; and 5) whether Rosco had infringed on Mirror Lite's patent.

On remand, Mirror Lite conceded that Rosco's patent was

---

[1] 35 U.S.C. § 103 limits patentability

if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

[2] 35 U.S.C. § 102(e) provides that person is entitled to a patent unless the invention was the subject of a previously issued patent.

[3] 35 U.S.C. § 102(g) provides that person is entitled to a patent unless "before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it."

[4] 35 U.S.C. § 102(a) provides in part that a person is not entitled to a patent unless "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent."

valid, while Rosco argued that Mirror Lite's '984 patent was
invalid.  Rosco contended that prior to the date of Mirror Lite's
invention, Rosco had conceived, reduced to practice, and sold
mirrors containing all the elements of claims 1, 2, 3, 6, 7, and
8 of the '984 patent, thus rendering it invalid under 35 U.S.C. §
102(a).  Benjamin Englander, one of Rosco's owners, had testified
to that effect.  Rosco had also introduced this mirror as Exhibit
110, which is a "Hawk Eye Mirror" based on the '357 patent.
Mirror Lite responded that: 1) Rosco failed to show that its
previous mirror had a decreasing radii of curvature along its
major and minor axes and did not contain a reflective outer
surface and a non-reflective inner surface; or in the
alternative, 2) that Rosco could not show that it appreciated
these aspects of its mirror; and 3) that Rosco could not prove
that it had used this mirror publicly before the priority date of
the '984 patent.

I found that Exhibit 110 did have these qualities, that
Rosco had used the mirror publicly, and that Rosco had
anticipated Mirror Lite's patent under 35 U.S.C. § 102.  I also
held that Mirror Lite's '984 patent was unenforceable due to
Mirror Lite's inequitable conduct in procuring the patent.
Specifically, I held that Mirror Lite had intended to mislead the
examiner by failing to disclose another Mirror Lite mirror that
constituted prior art.

I also held that Rosco failed to prove its claim of infringement. In particular, Rosco sought to prove that four of Mirror Lite's mirrors infringed on Rosco's '357 patent, but Rosco had not proven that the four allegedly infringing mirrors appropriated the novelties that distinguished Rosco's '357 patent from prior art.

On appeal for the second time, the Federal Circuit reversed this Court's holding that Exhibit 110 anticipated Mirror Lite's '984 patent. Specifically, the Federal Circuit held that Rosco failed to prove by clear and convincing evidence that Exhibit 110 disclosed every claim limitation of the '984 patent because "[t]estimonial evidence of invalidity must be corroborated." *Rosco, Inc. v. Mirror Lite, Co.*, 03-1562, 120 Fed.Appx. 832 (Fed. Cir. Jan. 19, 2005) (unpublished). Rosco presented the testimonial evidence of Benjamin Englander to the effect that he had designed Exhibit 110 and that it contained every element of claims 1, 2, 3, 6, 7, and 8 of Mirror Lite's '984 patent. Exhibit 110 itself, the Federal Circuit held, was insufficient to corroborate this testimony. Nor did the testimony of Rosco's expert witness, Harvey Manbeck, suffice because he based his testimony on Benjamin Englander's representations. With regard to my finding of inequitable conduct by Mirror Lite for failing to disclose its mirror constituting prior art, the Federal Circuit held that there was insufficient evidence of Mirror

Lite's intent to deceive. The Federal Circuit remanded "for further proceedings solely on the issue of infringement, the determination of which should be made on the existing trial record."

I must therefore determine whether Mirror Lite has proven that Rosco infringed on Mirror Lite's '984 patent. In this motion, Mirror Lite contends that infringement has been proven because: 1) Benjamin Englander testified that a mirror that the Hawk-Eye mirrors contained all of the elements of the claims of Mirror Lite's '984 patent and that I previously found this testimony credible; 2) Rosco stipulated at trial that it had infringed on Mirror Lite's patent; and 3) Rosco is judicially estopped from contesting infringement.


Evidence at Trial

At trial, Rosco sought to prove that Exhibit 110, which is based on the '357 patent, anticipated Mirror Lite's subsequent '984 patent by relying on the axiom that "that which would literally infringe if later anticipates if earlier." *See Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001). This has been referred to as the "reverse infringement" test for anticipation. James C. Forbes, *Inherency in U.S. Patent Law*, 3 JOHN MARSHALL LAW SCHOOL, CENTER FOR INTELLECTUAL

PROPERTY LAW NEWS SOURCE, Winter 2001, at 13.  In support of this
argument, Rosco called Benjamin Englander, who testified that
Exhibit 110 contained every element of claims 1, 2, 3, 6, 7, and
8 of Mirror Lite's '984 patent.

During the trial, Benjamin Englander, one of Rosco's owners
and officers testified concerning the intersection of Rosco's
mirrors and Mirror Lite's '984 patent as follows:

> Q:  I would like to ask you, Mr. Englander, a series of
> questions about what is claimed by Mirror Lite in its
> patent which issued in 1996 and I want you to tell the
> court if your oval shaped cross-view mirror which came
> into existence, as you testified, in February or March
> of 1992, meets the elements of the claim.  I'm going
> to take you claim by claim, all right?
>
> . . . .
>
> Q:  A mirror assembly, comprising (a) mirror lens having a
> reflective outer surface and a non-reflective rear
> surface.  Does your oval shape mirror have that?
>
> A:  Yes.
>
> Q:  With the mirror lens comprising a mirror body which
> terminates in an oval perimetral edge.  Does your oval
> mirror have that?
>
> A:  Yes, our oval mirror does have a mirror body and it
> has an oval perimetral edge.
>
> Q:  Does the mirror body terminate -- does the edge
> surround the reflective surface and the non-reflective
> surface of the mirror lens?
>
> A:  Yes, the edge wraps around the reflective surface and
> non-reflective surface, yes.
>
> Q:  Does your mirror body being a substantially convex
> ellipsoid having a major axis and minor axis which
> intersects with the major axis, the major axis having
> a bearing radius of curvature which radius decreases
> from the intersection with the minor axis to the
> perimetral edge, does the Rosco cross-view oval shape
> mirror have that?
>
> A:  Yes, our mirror is a substantially convex ellipsoid by
> definition of being an ellipse, major and minor, the
> minor does intersect with the major axis and along the
> major axis there is a various radius of curvature and

that radius value does decrease from the intersection
of the minor access which is the center of the mirror
as it goes towards the perimetral edge.

. . . .

Q:   With respect to all of these claims [of the Mirror
     Lite patent] is there any question in your mind that
     your mirrors had that before September 9, 1992?

A:   Yes, there was no question in my mind our mirrors had
     them before September 9th, 1992.[5]

(Tr. 109-11.)  Englander then confirmed that Rosco continued to

manufacture mirrors that embodied each of the claims of the '984

patent:

Q:   Have your mirrors that you manufactured in 1992
     changed in any way through to the present date?  I'm
     referring specifically to your oval cross-view
     mirrors?

A:   No they are oval cross-view mirrors.

*See also Rosco, Inc.*, 120 Fed.Appx. 832, 836 (noting that

"Englander testified that during the same time he helped his

father design a mirror containing every element of claims 1, 2,

3, 6, 7, and 8 of [Mirror Lite's] patent.").

Similarly, Rosco's expert witness, Harvey Manbeck, testified

as follows:

---

[5] Rosco contends that Englander was not an expert in claim
construction and his testimony concerning whether Rosco's mirrors
embodied all of the claims of Mirror Lite's patent is therefore not
persuasive.  Rosco does not, however, state in what manner Englander's
construction of the claims of the '984 patent differ from this Court's
construction or the plain language of the claims.  Indeed, as an
inventor of mirrors, the Court finds him to be a person of ordinary
skill in the field of the invention, thereby in possession of
knowledge any special meanings or usage the words of the claim may
have.  *See Phillips v. AWH Corp.*, – F.3d –, 2005 WL 1620331 (Fed. Cir.
July 12, 2005).

The first thing that the [first claim of the '984 patent] calls for is a mirror assembly. Certainly, the ['357 patent] is showing us a mirror assembly.

The second thing is, a mirror lens having a reflective outer surface and a non-reflective -- well, the design has that. Mirrors don't work if they don't have a non-reflective rear surface.

The next requirement is that the mirror lens comprises a mirror body which terminates in an oval perimetral edge. Well, the mirror lens in the design patent certainly has an oval perimetral edge. The edge surrounds the reflective surface and the non-reflective surface of the mirror lens. Well, again, that's pretty clearly shown in the ['357 patent].

Then it says, the mirror body being a substantially convex ellipsoid, having a major axis and a minor axis which intersects with the major axis. Well, that is, to my understanding, inherent in the mirror lens which the ['357] patent shows. And it's been my understanding that Mr. Englander also testified to that point.

Now, the final thing is, the mirror axis having a varying radius of curvature, which radius decreases from the intersection with the minor axis to the perimetral edge. Well, that, too, is in here, is shown in the ['357] patent.

So, the ['357] patent meets every limitation of the claim, and thereby anticipates it.

(Tr. 175-76.)

Finally, in its proposed findings of fact submitted to this Court, Rosco stated that its Hawk Eye mirror literally infringed Mirror Lite's '984 patent. (*See* Rosco's Revised Findings of Fact and Conclusions of Law 59-62.) Accordingly, Rosco's argument, in effect conceded that Exhibit 110 infringed on Mirror Lite's '984 patent, if that patent was in fact valid.

I previously relied on this testimony in concluding that the '357 patent and Hawk Eye mirror anticipated Mirror Lite's '984 patent. Because this determination was made based on Rosco's

argument that "that which would literally infringe if later in
time anticipates if earlier." *See Bristol-Myers Squibb Co.*, 246
F.3d at 1378. I therefore necessarily concluded that Rosco's
mirrors infringed upon Mirror Lite's patent, if that patent was
valid.

I also observed that Exhibit 110, Rosco's allegedly
infringing mirror, had the following components:

> a lens that has a reflective surface and a non-reflective
> rear surface surrounded by an oval perimetral edge, is a
> substantially convex ellipsoid, and has intersecting major
> and minor axes; a means for supporting the lens that is
> comprised of a mounting frame, which abuts the edge of the
> lens's non-reflective surface and has at least one hole in
> it to receive a fastener for the means for mounting the
> mirror assembly, and a gasket, which secures the mirror lens
> to the mounting frame; and a means for mounting the lens to
> the exterior of a vehicle.

*Rosco, Inc. v. Mirror Lite Co.*, CV-96-5658 (E.D.N.Y. July 8,
2003).

As a result of the complicated procedural history of this
case, both parties now adopt positions contrary to those they
took at trial. Mirror Lite, seeking to avoid invalidation of its
patent by anticipation, argued at trial that Rosco's Exhibit 110
was different from its '984 patent because Rosco's mirror did not
contain a reflective outer surface and a non-reflective rear
surface and because Rosco's mirror exhibited a constant radius of

curvature.[6]  Now Mirror Lite contends the opposite –– that

Rosco's sale of Exhibit 110 infringed on the '984 patent.

Similarly, Rosco argued at trial that its mirror, Exhibit 110,

embodied all the claims of Mirror Lite's '984 patent, and thereby

invalidated it.[7]  Now Rosco reverses position and contends that

Exhibit 110 is distinct from patent '984 because it does not

contain a reflective exterior.  With these changed litigating

positions in mind, I turn to the law of infringement and the

evidence presented at trial.

## Discussion

Determining whether a claim has been infringed requires a

two-step analysis.  *Carroll Touch, Inc. v. Electro Mech. Sys.,*

*Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993).  "First, the claim

must be properly construed to determine its scope and meaning.

Second, the claim as properly construed must be compared to the

accused device or process."  *Id.*

In interpreting claims, a court looks first to the intrinsic

evidence of record, including the patent itself, the claims, the

specification, and the prosecution history, if in evidence.

---

[6] *See, e.g.*, Mirror Lite Post-Trial Memo. at 21-22.

[7] For example, Rosco stated in its post-trial memo that "Mirror
Lite's '984 patent is invalid since prior to 'the invention' thereof
by Messrs. Schmidt et al., the invention described in the claims of
the '984 Patent was made by Rosco in this country . . . ."  (Rosco
Post-Trial Memo. 57.)

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The foremost piece of intrinsic evidence is the language of the claim. *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005). Words in a claim are generally interpreted to have the ordinary and customary meaning that persons experienced in the field of the invention would give them, unless it is clear from the prosecution history that the inventor used the term in a different manner. *Vitronics Corp.*, 90 F.3d at 1582; *Hoechst Corp. v. BP Chems. Ltd.*, 78 F.3d 1575m 1578 (Fed. Cir. 1996). When the claim language itself is unclear, courts look first to the written description of the invention for guidance. *Chimie*, 402 F.3d at 1377; *Vitronics Corp.*, 90 F.3d at 1582. The written description assists the Court in determining whether the inventor has used any terms in a manner other than according to their ordinary meaning. *Id.*

The next most important piece of intrinsic evidence, other than the language of the claim itself, is the prosecution history of the patent, if in evidence. *Id.* at 1582. The prosecution history limits the meanings of terms to exclude interpretations that were disclaimed during the prosecution of the patent. *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). Included within this analysis is an examination of the prior art cited during the prosecution. *Vitronics Corp.*, 90 F.3d at 1583.

Where the intrinsic evidence is ambiguous, Courts may consider extrinsic evidence. *Id.* Other prior art documents and dictionaries are preferred sources of extrinsic evidence. *See id.* at 1584. The Court may also consider expert testimony concerning the language of the claim. *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709 (Fed. Cir. 1998). Testimony of one skilled in the art of the meaning of claim terms qualifies as relevant extrinsic evidence. *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1553 (Fed. Cir. 1997), *overruled on other grounds*, *Cybor Corp. v. FAS Tech., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). "[I]nventors are typically persons skilled in the field of the invention" for purposes of claim construction. *Phillips*, 2005 WL 1620331, at *5. Extrinsic evidence may not, however, be used to deviate from the unambiguous language of the claim. *Bell & Howell Document Mgmt. Prod. Co. v. Altek Sys.*, 132 F.3d 701 (Fed. Cir. 1997).

Claim one reads:

1. A mirror assembly, comprising:

(a) a mirror lens having a reflective outer[8] surface and a non-reflective rear surface, the mirror lens comprising a mirror body which terminates in an oval perimetral edge, the edge surrounds the reflective surface and the non-reflective surface of the mirror lens, the mirror body being a substantially convex ellipsoid having a major axis and a minor axis which intersects with the major axis, the major axis having a varying radius of curvature, which radius decreases from the intersection with the minor axis.

---

[8] In its July 8, 2003 memorandum and order, the Court omitted the word "outer" from its recitation of the claim language.

The Court previously construed this claim in its July 8, 2003, memorandum and order in a fashion parallel to its plain language as follows:

> Claim 1 of the '984 patent describes a mirror assembly whose lens has a reflective surface and a non-reflective rear surface that are surrounded by an oval perimetral edge, is a substantially convex ellipsoid, and has intersecting major and minor axes. The major axis has a radius of curvature that decreases from the intersection with the minor axis to the perimetral edge.

*Rosco, Inc. v. Mirror Lite Co.*, CV-96-5658 (E.D.N.Y. July 8, 2003). This construction was neither affirmed nor reversed on appeal.

Once the claim is interpreted, determining patent infringement requires proof that someone: 1) without authority; 2) makes, uses, offers to sell, sells, or imports; 3) the patented invention; 4) within the United States, its territories, or possessions; 5) during the patent. 35 U.S.C § 271(a); *NTP, Inc. v. Research In Motion, Ltd.*, 392 F.3d 1336, 1366 (Fed. Cir. 2004). To literally infringe, an accused device must embody exactly each element or limitation of the claim.[9] The only element of Mirror Lite's infringement claim that is in dispute is whether Rosco's exhibit 110, the Hawk Eye mirror, embodies each element or limitation of claim one of the '984 patent.

---

[9] *See Charles Greiner & Co. v. Mari-Med Mfg.*, 962 F.2d 1031, 1034 (Fed. Cir. 1992). Mirror Lite does not argue that it has proven infringement under the doctrine of equivalents.

In finding that Exhibit 110 anticipated the '984 patent under the maxim "that which would literally infringe if later in time anticipates if earlier," I held that Exhibit 110 contained all of the elements of the '984 patent. I did so based in large part on the testimony of Rosco's witnesses quoted above. In reversing this decision, the Federal Circuit held that, although Benjamin Englander testified that Exhibit 110 had a decreasing radius, his testimony was not properly corroborated, as required to invalidate a patent. To find infringement, however, corroboration is not necessary, and Mirror Lite must merely prove its case by a preponderance of the evidence. *See Smithkline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1355 (Fed. Cir. 2005) (infringement must be proven by preponderance of the evidence). Corroboration in the context of proving invalidity is required in part because of the temptation to recall "things as the party calling them would have them recollect them" and "the temptation to actual perjury." *The Barbed Wire Patent*, 143 U.S. 275, 284 (1892). The same concerns do not apply where that testimony is used against the party proffering it. The Court of Appeals did not conclude that there was a lack of sufficient evidence to support this Court's finding that Rosco's mirror contained each element of Mirror Lite's patent. Rather, it concluded that the evidence of infringement was not the appropriate type to support a finding of anticipation. The Court

of Appeals opinion therefore poses no bar to a finding that Rosco's use of Exhibit 110, the Hawk Eye mirror, infringed Mirror Lite's '984 patent.

Indeed, because that determination was not reversed by the Court of Appeals, it is the law of the case -- a doctrine "based on the salutary public policy that litigation should come to an end." *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967). I recognize that the court that established the law of the case can review its earlier decision, consistent with the previous decisions of the Court of Appeals, if one of three "exceptional circumstances" exists: 1) the evidence on a subsequent trial was substantially different; 2) controlling authority has intervened; or 3) the earlier decision was clearly erroneous and would work a manifest injustice. *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 900 (Fed. Cir. 1984); *see also Messinger v. Anderson,* 225 U.S. 436, 444 (1912) (Holmes, J.) (stating that the doctrine expresses a general practice and not a limit on a court's power).

Rosco contends that the third exception applies -- that the testimony of its owner and expert witness and the findings of fact[10] that it proposed to this Court were clearly erroneous

---

[10] Statements in proposed findings of fact constitute evidentiary admissions. *United States v. Bedford Assoc.*, 713 F.2d 895, 905 (2d Cir. 1983); *cf. Lowry v. Whitaker Cable Corp.*, 348 F. Supp. 202, 210

(continued...)

because contrary to a physical examination of the allegedly infringing mirror. Rosco contends that, despite the testimony of its owner and expert to the contrary, the Hawk-eye mirrors do not have a reflective "outer" surface. In so arguing, it challenges this Court's previous claim construction.

Rosco argues that a "reflective outer surface" requires that the reflective surface be at the extreme edge of the mirror. In so arguing, Rosco cites Webster's Ninth New Collegiate Dictionary for the proposition that "outer" means "situated or belonging on the outside." Yet the same entry also states that "outer" may be relational concept, meaning "situated farther out," a meaning that is consistent with the position Rosco previously advocated when seeking to invalidate Mirror Lite's patent. It cannot be disputed that the reflective surface of Exhibit 110, no matter where it lies, is further out than its "non-reflective rear surface." Accordingly, I adopt and adhere to the position previously advocated by, but now adverse to Rosco, that "outer" means "situated farther out."

Nor do I find that the likelihood that this claim construction will be reversed on appeal is a sufficient reason to

---

[10](...continued)
n.4 (W.D.Mo. 1972) (proposed findings of fact constitute binding judicial admissions). *Contra City of Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F. Supp. 1257, 1280 (N.D. Ohio 1980) (proposed findings of fact are not evidentiary admissions).

deviate from the law of the case. Instructive is the Federal Circuit's decision in *Key Pharmaceuticals v. Hercon Laboratories Corp.*, 161 F.3d 709 (Fed. Cir. 1998). Key Pharmaceuticals brought a patent infringement action against Hercon relating to a patent for a "patch" that delivered drugs through the skin. Hercon countered that the patent was invalid because anticipated by another patent application. *Id.* at 711. At trial, invalidity turned primarily on the construction of a claim referring to dosage. *Id.* at 712. On cross-examination, Hercon's expert admitted to a mathematical error with respect to the dosage range disclosed in the claimed prior art, precluding its use as an anticipating reference. *Id.* at 715. In post-trial briefing, Hercon argued for a different claim construction and relied on the testimony of Key Pharmaceutical's expert witness, which if credited permitted Key Pharmaceutical's patent to be invalidated. *See Key Pharm., Inc. v. Hercon Labs.*, 981 F. Supp. 299, 312 (D.Del. 1997). Key Pharmaceuticals similarly altered its position, this time arguing for the construction that Hercon had proffered at trial. In ruling on these issues, the district court adopted the claim construction argued for by Hercon and its witness at trial and declined to invalidate the patent.

Hercon appealed, challenging the district court's claim construction. The Federal Circuit observed that Hercon's change in position was "an obvious attempt to salvage its invalidity

case." *Key Pharm.*, 161 F.3d at 715. The Court condemned Hercon's assertion of contrary positions, but because no previous opinion had announced such a rule, declined to estopp Hercon from contesting the lower court's claim construction. *Id.* at 715-16. The Federal Circuit has subsequently described *Key Pharmaceuticals* as "stand[ing] for the proposition that a party will be judicially estopped from asserting a position on appeal that is inconsistent with a position it advocated at trial and persuaded the trial court to adopt." *Interactive Gift Exp., Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001); *see also Hockerson-Halberstadt, Inc. v. Converse, Inc.*, 183 F.3d 1369, 1374 (Fed. Cir. 1999) (agreeing with *Key Pharmaceuticals*); Kelly L. Morron, *Time for the Federal Circuit to Take a Judicious Approach to Judicial Estoppel*, 28 AM. INTELL. PROP. L. ASS'N Q.J 159 (2000). In sum, Rosco contends that this Court erred in adopting the position that it advocated for at trial. It has thereby invited any error it now complains of.


Findings of Fact

I therefore credit the testimony of Englander and Manbeck, and find based on this evidence the following facts:

1) Mirror Lite and Rosco are in the business of manufacturing bus mirrors.

2)   Rosco is owned in part by Benjamin and Solomon Englander.

3)   Mirror Lite applied for a patent in September of 1992.

4)   The patent and trademark office issued patent '984 on

December 31, 1996 to Mirror Lite.

5)   The '984 Patent contains the following claim:

> 1.  A mirror assembly, comprising:
>
> (a) a mirror lens having a reflective outer surface
> and a non-reflective rear surface, the mirror lens
> comprising a mirror body which terminates in an oval
> perimetral edge, the edge surrounds the reflective
> surface and the non-reflective surface of the mirror
> lens, the mirror body being a substantially convex
> ellipsoid having a major axis and a minor axis which
> intersects with the major axis, the major axis having
> a varying radius of curvature, which radius decreases
> from the intersection with the minor axis to the
> perimetral edge.

6)   Claims two through nine are all dependent from claim one.

Claim two specifies means for supporting the lens and

mounting it.  Claim three requires a mounting frame with a

fastener hole and gasket.  Claim four specifies that the

means for mounting the device comprises a mounting bracket

consisting of two "L-shaped" portions.  Claim five specifies

that the two "L-shaped" portions are connected by an

adjustable fastener.  Claim six specifies that the mirror

may mount to a vehicle.  Claim seven specifies that the

minor axis of the mirror lens has a varying radius of

curvature.  Claim eight specifies that the minor axis has

its minimum radius of curvature at the perimetral edge.

Claim nine specifies that the mirror has an opaque band around the reflective surface.

7) Rosco manufactured mirrors called the "Hawkeye" and "Mini Hawkeye."

8) The Hawkeye and Mini Hawkeye were manufactured according to specifications contained in Rosco's '357 design patent.

9) At trial, Rosco called Harvey Manbeck. Manbeck is a graduate of the University of Louisville Law School and possess a degree in electrical engineering. He served as general patent counsel of the General Electric Company for twenty years and as Commissioner of Patents and Trademarks for the United States. This experience renders Harvey Manbeck an expert in patent law.

10) Benjamin Englander, an inventor, designer, and manufacturer of bus mirrors testified at trial. Benjamin Englander is one skilled in the art of mirror design.

11) Based on a totality of the evidence, including the testimony of Benjamin Englander and Harvey Manbeck, it is the Court's finding that the "Hawkeye" and "Mini Hawkeye" mirrors have the following characteristics:

   a) a lens with a reflective outer surface

   b) a lens with a non-reflective rear surface

   c) a mirror lens comprising a mirror body which

terminates in an oval perimetral edge

d)   the edge wraps around the reflective surface and
     non-reflective surface

e)   a lens that was a substantially convex ellipsoid

f)   a lens that had intersecting major and minor axes

g)   a lens with a various radius of curvature, and
     that radius decreases from the intersection with
     the minor axis to the perimetral edge.

12)  Manbeck testified and the Court finds that mirrors
     manufactured to contain all the claims of the '357 design
     patent also contain all of the claims of the '984 patent.

13)  Rosco conceded that the Hawk Eye and Mini Hawk Eye mirrors
     infringed on Mirror Lite's '984 patent in its proposed
     findings of fact submitted to this Court.

14)  I find that the above evidence is substantial and it clearly
     establishes that Rosco's Hawk Eye and Mini Hawk Eye mirrors
     contain each and every element of claim 1 of the '984
     patent.

15)  Based on the testimony of Benjamin Englander, I conclude
     that Rosco manufactured and sold such mirrors after the
     effective date of Mirror Lite's '984 patent.

16)  Between February 23, 1997, and February 23, 2000, Rosco has
     sold in excess of 150,000 Hawk Eye mirrors.  (Rosco's

Revised Findings of Fact 5.)

17) Rosco's Hawk Eye mirror embodies every element of the first
claim of Mirror Lite's '984 patent and infringes upon it.

Damages and Discovery

Although I have determined liability, the parties have not
addressed the measure of damages. Mirror Lite seeks additional
discovery concerning Rosco's use of infringing mirrors since the
date of trial. Rosco contends that additional discovery would be
contrary to the mandate. Neither party cites case law in support
of their position.

In this case, the Federal Circuit remanded for "proceedings
solely on the issue of infringement, the determination of which
should be made on the existing trial record." Ordinarily on
remand, a district court may address only: (1) the issues
remanded; (2) issues arising for the first time on remand; or (3)
issues that were timely addressed before the district and/or
appellate courts but which remain undecided. *United States v.
Morris*, 259 F.3d 894, 898 (7th Cir. 2001). In other words, the
lower court may act on matters left open by the mandate. *Laitram
Corp. v. NEC Corp.*, 115 F.3d 947, 951 (Fed. Cir. 1997).

Where the mandate does not state otherwise, a district court
may exercise its discretion to reopen discovery after a case is
remanded for further factual findings. *See Mallas v. United*

*States*, 54 F.3d 773 (4th Cir. 1995) (unpublished decision available at 1995 WL 290401).  Mirror Lite is entitled to damages until the infringement ceased, and a court ordinarily has jurisdiction to determine damages until the entry of a final judgment.  *See Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 526 (10th Cir. 1987) (plaintiff was entitled to post-trial discovery to determine damages due up to final judgment in trademark infringement case); *Rea v. Ford Motor Co.*, 560 F.2d 554, 557 (3d Cir. 1977) (district court correctly awarded damages for lost profits incurred between first appeal and retrial; district court has power to award damages stemming from events occurring up to date of the ultimate judgment).  The issue of damages incurred between trial and the present day arises for the first time on remand, following a finding of infringement.  Accordingly, limited discovery is appropriate.

The mandate is not to the contrary.  It contains no discussion of the measure of damages to which Mirror Lite would be entitled upon a finding of infringement.  Although the Court of Appeals' opinion is clear that the issue of infringement should be based solely on the trial record, it is silent with regard to additional discovery or supplementation of the record regarding damages.  Additional discovery is, therefore, appropriate to properly compensate Mirror Lite for the damages it has incurred during the years between trial and the present day.

This is not to say that the additional discovery will be akin to that which Mirror Lite could and did take prior to trial. The measure of damages in an infringement case is "the difference between [the patent owner's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964). There must be adequate evidence in the record to recover lost profits.[11] This requires evidence of "a causal relation between the infringement and its loss of profits." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214, 1218 (Fed. Cir. 2001). Where the evidence is inadequate to establish lost profits, a Court must determine a "reasonable royalty rate." 35 U.S.C. § 284; *Lindemann Mashinenfabrik GmbH v. American Hoist & Derrick Co.*, 895 F.2d 1403 (Fed. Cir. 1990). Under either a lost profit or reasonable royalty measure, the patent holder must "reconstruct the market to project economic results" of what would have occurred had the market developed absent the infringing product or what agreement would have resulted had a hypothetical negotiation over royalty rates occurred. *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003); *Riles*

---

[11] *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999). In its post-trial brief, Mirror Lite argued that if the Court found that Rosco had infringed its patent, it was entitled to all the revenue that Rosco received from the sale of infringing mirrors. (See Defendant's Post Trial Brief 11-12.) No party cites to any evidence of the marginal costs of production.

*v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002). Mirror Lite must have presented "sound economic proof of the nature of the market." *Id*. To the extent that Mirror Lite failed to meet this burden at trial, it will not be permitted to supplement the record to close any evidentiary gaps.[12] Mirror Lite may, however, take additional discovery concerning: 1) whether and to what extent Rosco continued to sell Hawk Eye and Mini Hawk Eye mirrors after the trial; and 2) post-trial revenue, costs, and profits Rosco has earned or incurred through sale or manufacture of Hawk Eye and Mini Hawk Eye mirrors.

<u>Conclusion</u>

For the foregoing reasons, I conclude that Rosco's sale of the Hawk Eye and Mini Hawk Eye mirror has infringed on Mirror Lite's '984 patent. The case is referred to the magistrate for discovery consistent with this opinion.

---

[12] In determining a reasonable royalty rate, the Court is to consider, to the extent there is evidence on the record, the factors listed in *Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). *See Dow Chemical Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Lindemann Mashinenfabrik GmbH v. American Hoist & Derrick Co.*, 895 F.2d 1403 (Fed. Cir. 1990); *Devex Corp. v. Gen. Motors Corp.,* 667 F.2d 341 (Fed. Cir. 1981); *National Presto Indus. v. Black & Decker (U.S.), Inc.,* 760 F. Supp. 699, 701 (N.D. Ill. 1991).

The Clerk is directed to furnish a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.

Dated :   Brooklyn, New York

August 26, 2005

By: <u>/s/ Charles P. Sifton (electronically signed)</u>
United States District Judge