UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
Rosco, Inc.,

                Plaintiff,            CV-96-5658 (CPS)

   - against -                     MEMORANDUM OPINION
                                              AND ORDER
Mirror Lite Company,

                Defendants.

----------------------------------------X

SIFTON, Senior Judge.

    In 1996, Rosco, Inc., brought this action against Mirror Lite asserting claims of design patent infringement, trade dress infringement, false designation of origin, tortious interference with business relationships, misrepresentation in violation of 15 U.S.C. § 1125(a), and common law trademark infringement. In addition to damages, the complaint sought declaratory and injunctive relief pursuant to 29 U.S.C. §§ 2201 and 2202. Mirror Lite asserted a counterclaim of patent infringement in violation of 15 U.S.C. § 1125(a).

    The matter was tried before the undersigned sitting without a jury between March 6 and March 10, 2000. After appeal to the Federal Circuit and remand for determination of infringement, I found that Rosco had infringed Mirror Lite's '984 patent. Now before this Court is (1) Mirror Lite's motion for a permanent injunction pursuant to 35 U.S.C §283; and (2)Rosco's request for limitations on the scope of post-trial damages discovery and

correction of factual finding #16 of my August 26, 2005 opinion, that Rosco sold "in excess of 150,000 Hawk Eye mirrors."

**BACKGROUND**

Procedural History

The facts of this case have already been stated several times in the prior opinions in this case. *Rosco v. Miller Lite*, 139 F.Supp.2d 287 (E.D.N.Y 2001); *Rosco v. Miller Lite*, 304 F.3d 1373 (2d Cir. 2002). It is unnecessary to repeat them fully again here. A procedural history is offered below.

Rosco's '357 design patent relates to an oval, highly convex cross-view mirror with a black, flat metal backing. Rosco applied for this patent in April of 1992, and the patent issued in April of 1994. Mirror Lite's '984 utility patent relates to an oval cross-view mirror with a varying radius of curvature along the major axis of the convex ellipsoid mirror lens. Mirror Lite applied for this patent in September of 1992, and the patent issued in December of 1996.

In its complaint, Rosco sought a declaratory judgment that all claims of Mirror Lite's '984 patent were invalid and unenforceable due to Mirror Lite's inequitable conduct in procuring the patent and a finding that Mirror Lite infringed its '357 patent. Mirror Lite filed a counterclaim alleging that Rosco infringed the '984 patent. At trial, Mirror Lite contended that Rosco's patent was invalid as functional and therefore not

infringed.

After a bench trial, I held in relevant part that Rosco's '357 patent was invalid as functional and obvious pursuant to 35 U.S.C. § 103.[1] I also found Mirror Lite's patent invalid under 35 U.S.C. § 102(e)[2] and (g).[3] Accordingly, I did not reach the merits of Mirror Lite's patent infringement claim.

The Federal Circuit reversed the holdings that both Rosco and Mirror Lite's patents were invalid. The Court remanded in relevant part for consideration of: 1) whether Mirror Lite had proven by clear and convincing evidence that Rosco's patent was invalid under 35 U.S.C. § 103; 2) whether Mirror Lite had infringed Rosco's patent; 3) whether Mirror Lite's patent was invalid under 35 U.S.C. §§ 102(a),[4] (f), and 103; 4) whether Mirror Lite's patent was unenforceable due to inequitable conduct; and 5) whether Rosco had infringed on Mirror Lite's

---

[1] 35 U.S.C. § 103 limits patentability

if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

[2] 35 U.S.C. § 102(e) provides that person is entitled to a patent unless the invention was the subject of a previously issued patent.

[3] 35 U.S.C. § 102(g) provides that person is entitled to a patent unless "before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it."

[4] 35 U.S.C. § 102(a) provides in part that a person is not entitled to a patent unless "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent."

patent.

On remand, Mirror Lite conceded that Rosco's patent was valid, while Rosco argued that Mirror Lite's '984 patent was invalid. Rosco contended that prior to the date of Mirror Lite's invention, Rosco had conceived, reduced to practice, and sold mirrors containing all the elements of claims 1, 2, 3, 6, 7, and 8 of the '984 patent, thus rendering it invalid under 35 U.S.C. § 102(a). Benjamin Englander, one of Rosco's owners, testified to that effect. Rosco introduced this mirror as Exhibit 110, called a "Hawk Eye Mirror" based on the '357 patent. Mirror Lite responded that: 1) Rosco failed to show that its previous mirror had decreasing radii of curvature along its major and minor axes and did not contain a reflective outer surface and a non-reflective inner surface; or in the alternative, 2) that Rosco could not show that it appreciated these aspects of its mirror; and 3) that Rosco could not prove that it had used this mirror publicly before the priority date of the '984 patent.

I found that Exhibit 110 did have these qualities, that Rosco had used the mirror publicly, and that Rosco had anticipated Mirror Lite's patent under 35 U.S.C. § 102. I also held that Mirror Lite's '984 patent was unenforceable due to Mirror Lite's inequitable conduct in procuring the patent. Specifically, I held that Mirror Lite had intended to mislead the examiner by failing to disclose prior art.

I also held that Rosco failed to prove its claim of infringement. In particular, Rosco sought to prove that four of Mirror Lite's mirrors infringed on Rosco's '357 patent, but Rosco had not proven that the four allegedly infringing mirrors appropriated the novelties that distinguished Rosco's '357 patent from prior art.

On appeal for the second time, the Federal Circuit reversed this Court's holding that Exhibit 110 anticipated Mirror Lite's '984 patent. Specifically, the Federal Circuit held that Rosco failed to prove by clear and convincing evidence that Exhibit 110 disclosed every claim limitation of the '984 patent because "[t]estimonial evidence of invalidity must be corroborated." *Rosco, Inc. v. Mirror Lite, Co.*, 03-1562, 120 Fed.Appx. 832 (Fed. Cir. Jan. 19, 2005) (unpublished). Rosco presented the testimonial evidence of Benjamin Englander to the effect that he had designed Exhibit 110 and that it contained every element of claims 1, 2, 3, 6, 7, and 8 of Mirror Lite's '984 patent. Exhibit 110 itself, the Federal Circuit held, was insufficient to corroborate this testimony. Nor did the testimony of Rosco's expert witness, Harvey Manbeck, suffice because he based his testimony on Benjamin Englander's representations. With regard to my finding of inequitable conduct by Mirror Lite for failing to disclose prior art, the Federal Circuit held that there was insufficient evidence of Mirror Lite's intent to deceive. The

Federal Circuit remanded "for further proceedings solely on the issue of infringement, the determination of which should be made on the existing trial record."

I thereafter determined that Mirror Lite had proven that Rosco infringed Mirror Lite's '984 patent. I also ordered limited additional discovery on two issues: (1) whether and to what extent Rosco continued to sell Hawk Eye and Mini Hawk Eye mirrors post-trial; and (2) post-trial revenue, costs, and profits Rosco has earned or incurred through sale or manufacture of Hawk Eye and Mini Hawk Eye mirrors.

Recent Factual History

Rosco now asserts, through the declaration of Benjamin Englander, that Rosco holds patents for constant curvature oval cross-view mirrors[5] and has manufactured such mirrors since March 2000, under the Hawk Eye and Mini Hawk Eye registered trademark.[6] Englander further asserts that Ed Swain, Bob West, and Jed Routh, three employees of Thomas Buses Built Buses Inc. ("Thomas Buses"), a Rosco customer, informed Englander that Daniel Swain, Vice President of Sales for Mirror Lite, and another unidentified employee of Mirror Lite told the Thomas Buses employees that

---

[5] The three patents are U.S. patent numbers 6,328,450, 6,282,771 and 6,227,674 and are attached to the Englander Declaration as Exhibit A.

[6] If this statement is true then these mirrors would not infringe the '984 patent because they have a constant curvature.

Mirror Lite had won the case against Rosco, that "Rosco is locked out from the cross-view mirror business," that Thomas Buses would no longer be able to buy any Rosco oval cross-view mirrors, and that Rosco's supply agreement with Thomas Buses for oval mirrors would be null and void.

In contrast, defendant submits the declaration of Daniel Swain who states that he never told employees at Thomas Buses that Rosco was "locked out from the cross-view mirror business," that Thomas Buses could no longer buy any oval view mirrors from Rosco, or that Rosco's supply agreement with Thomas Buses for oval mirrors would be null and void. Swain further states that neither he nor anyone else at Mirror Lite ever made a statement to Thomas Buses or anyone else in the industry that Rosco cannot sell cross-view mirrors with a constant radius of curvature.

## DISCUSSION

Permanent Injunction

*Should an Injunction be Issued at All?*

35 U.S.C. §283 grants courts the power to issue permanent injunctions. ("The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.") The Supreme Court has recently held that

> [a]ccording to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. Mercexchange, LLC*, 126 S.Ct. 1837, 1839 (2006). Whether to grant or deny a permanent injunction is within the district court's equitable discretion. *Id.*

Rosco first urges that the injunction should be denied because it has ceased to manufacture and sell the infringing products. Cessation of production and sales is not in and of itself sufficient "sound reason" to deny a permanent injunction. *W.L. Gore & Associates, Inc. v. Garlock*, Inc., 842 F.2d 1275, 1282 (Fed. Cir. 1988)("The mere fact that [infringer] was no longer making or selling the infringing filament and packing products is not a sufficient ground for denying an injunction against future infringement.") Rather, the request for an injunction should be denied only when "the evidence is very persuasive that further infringement will not take place." *Id.* For example, where the infringer no longer had the manufacturing capacity to produce the infringing item, a permanent injunction was not appropriate. *Id.* In this case, the only evidence of Rosco's cessation of infringement is its own statement that it

has done so. If this sufficed for the "very persuasive" evidence that infringement had permanently ceased, few permanent injunctions would issue. As explained in *General Electric Co. v. New England Electric Mfg. Co.*, "The argument in such circumstances is very simple. If the defendant be honest in his protestations an injunction will do him no harm; if he be dishonest, the court should place a strong hand upon him...." 128 F. 738, 740 (2d Cir. 1904).

Rosco next argues that equitable considerations require that an injunction not be granted against it. Rosco submits the declaration of Benjamin Englander, who states that Mirror Lite's Vice President of Sales, Daniel Swain, and another Mirror Lite employee have approached employees of Rosco customer Thomas Buses and informed it that Mirror Lite had won the case against Rosco, that "Rosco is locked out from the cross-view mirror business," that the customer will no longer be able to buy any Rosco oval cross-view mirrors, and that Rosco's supply agreement with the customer for oval mirrors will be null and void.[7] Englander Declaration ¶8. Rosco asserts that it produces oval mirrors with constant radii of curvature which are not covered by the Mirror Lite Patent '984. As a result, Rosco claims that Mirror Lite's statements to Thomas Buses employees falsely represent my prior

---

[7] As explained in the facts section above, in his declaration Swain states that he never made any of these statements to personnel at Thomas Buses.

decision and attempt to parlay one patent ruling in its favor into industry domination.

In support of the argument that equitable considerations may prevent the issuance of a permanent injunction, Rosco relies on *Foster v. American Machinery & Foundry Co.,* 492 F.2d 1317, 1324 (2d Cir. 1977), holding that, "an injunction to protect a patent against infringement, like any other injunction, is an equitable remedy to be determined by the circumstances. It is not intended as a club to be wielded by a patentee to enhance his negotiating stance." Rosco also points to *Nerrney v. New York, N.Y. & H.R. Co.,* 83 F.2d 409, 411 (2d Cir. 1936) holding that, where "it is recognized that the only real advantage to a plaintiff in granting the injunction would be to strengthen its position . . . an injunction should not issue."

Even assuming that the only purpose of the permanent injunction were for Mirror Lite to strengthen its position, a permanent injunction would still issue because *Foster* and *Nerrney* are distinguishable from this case. In *Foster* the patent owner did not actually manufacture any products covered by the patent. Granting a permanent injunction would have given the patent owner a negotiating advantage in negotiations to license the infringer's use of the patent. Instead the court decided it was more equitable to grant mandatory royalties under a licensing scheme. In this case it is undisputed that Mirror Lite

manufactures mirrors covered by its '984 patent. Thus, this is not a case where a mandatory licensing scheme could adequately compensate the patent owner.

In *Nerrney* the requested permanent injunction would have given the patent owner very little benefit, would have huge costs for the railroad infringer, and would have caused a great inconvenience to the public because compliance would necessarily slow down train schedules. In this case, the permanent injunction would not disproportionately burden Rosco. To the extent an oval mirror with a varying radius of curvature is a superior bus mirror, a permanent injunction may be of significant value to Mirror Lite. Further, in *Nerrney* one factor for consideration was that the permanent injunction would inconvenience the public. Here that is not the case, since to the extent the public is interested in purchasing varying radii mirrors or riding on buses equipped such mirrors, such mirrors may be obtained from Mirror Lite. Finally, even accepting Rosco's portrayal of Mirror Lite's conduct as true, its efforts at self-help are not so egregious as to forfeit its right to the legal protections of an injunction.

*What Should the Scope of the Injunction Be?*

Rosco argues that to the extent Mirror Lite is entitled to an injunction, the proposed injunction submitted by Mirror Lite is overbroad because it: (1) prohibits Rosco from infringing "any claims of the '984 patent" including non-asserted claims 4, 5,

and 9 and (2) it prohibits any sale of "Rosco's Hawk Eye and Mini Hawk Eye mirror products despite the fact that, according to Rosco, it uses the "Hawk Eye" mark for mirrors with a constant radius of curvature.

Section 283 requires that the purpose behind an injunction be "to prevent the violation of any right secured by patent." 35 U.S.C. §283. See also *Eli Lilly and Co. v. Medtronic, Inc.*, 915 F.2d 670, 674 (Fed.Cir. 1990) ("an injunction is only proper to the extent it is 'to prevent the violation of any right secured by patent.'"). Therefore, "injunctive relief should be narrowly tailored to fit the specific legal violations." *Gemveto Jewelry Co. v. Jeff Cooper Inc.*, 800 F.2d 256, 259 (Fed. Cir. 1986). This is because "judicial restraint of lawful competitive activities . . . must be avoided." *Joy Technologies, Inc. v. Flackt, Inc.*, 6 F.3d 770, 777 (Fed. Cir. 1993).

Recognizing that this is the law, in its Reply Mirror Lite submits an amended proposed permanent injunction which prevents infringement only of "claims 1-3 and 6-8 of the '984 patent" and the sale of Hawk Eye and Mini Hawk Eye mirror products only to the extent they have "an oval lens with a varying radius of curvature along the major axis." Amended Proposed Permanent Injunction ¶2(b). These changes partially address Rosco's concerns.

The amended permanent injunction also prevents the sale of

mirrors with a list of characteristics including "a lens with a varying radius of curvature along the major axis and with such radius decreasing from the intersection with the minor axis to the perimetral edge." Amended Proposed Permanent Injunction 2(c)(7). As this is a characteristic of the infringing Hawk Eye and Mini Hawk Eye mirrors, ¶2(c)(7) covers the infringing Hawk Eye and Mini Hawk Eye mirrors. Without resolving the question of whether Mirror Lite has improperly suggested to customers that Rosco is totally out of the business and that all of its Hawk Eye and Mini Hawk Eye mirrors infringe, ¶2(b) of the amended proposed permanent injunction, specifically referring to certain Hawk Eye and Mini Hawk Eye mirrors, should also be struck in order to avoid potential misunderstanding on the part of consumers. Specifically naming the Hawk Eye and Mini Hawk Eye models might mislead consumers into thinking that all Hawk Eye and Mini Hawk Eye mirrors are enjoined. It is sufficient to list the characteristics of infringing mirrors, which would preclude the sale of infringing Hawk Eye and Mini Hawk Eye mirrors, but not all mirrors marketed under those names.[8]

---

[8] Although Mirror Lite's requested injunction will issue, modified as described above, such injunction will not issue until after the damages are resolved. At oral arguments I raised the issue of whether there was just reason for delay. see Fed. R. Civ. P. 54. Although the liability issue in this case is closed, the amount of damages is as yet undetermined. This would leave the more hotly contested damages issue to be appealed at a later date. It the interest of conservation of judicial resources, the injunction will be issued when the damages issue is decided so that both issues may be appealed together.

Damages Issues

The measure of damages in an infringement case is "the difference between [the patent owner's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964). There must be adequate evidence in the record to recover lost profits. This requires evidence of "a causal relation between the infringement and its loss of profits." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214, 1218 (Fed. Cir. 2001). Where the evidence is inadequate to establish lost profits, a Court must determine a "reasonable royalty rate." 35 U.S.C. § 284; *Lindemann Mashinenfabrik GmbH v. American Hoist & Derrick Co.*, 895 F.2d 1403 (Fed. Cir. 1990).[9] Under either a lost profit or reasonable royalty measure, the patent holder must "reconstruct the market to project economic results" of what would have occurred had the market developed absent the infringing product or what agreement would have resulted had a hypothetical negotiation over royalty rates occurred. *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003); *Riles*

---

[9] In determining a reasonable royalty rate, the Court is to consider, to the extent there is evidence on the record, the factors listed in *Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). *See Dow Chemical Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Lindemann Mashinenfabrik GmbH v. American Hoist & Derrick Co.*, 895 F.2d 1403 (Fed. Cir. 1990); *Devex Corp. v. Gen. Motors Corp.,* 667 F.2d 341 (Fed. Cir. 1981); *National Presto Indus. v. Black & Decker (U.S.), Inc.,* 760 F. Supp. 699, 701 (N.D. Ill. 1991).

*v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002).

Pre-Trial Damages - Correction of Factual Finding of Number of Units Sold
===

In the August Opinion, Fact Finding number 16, I found that, "Between February 13, 1997, and February 23, 2000, Rosco has sold in excess of 150,000 Hawk Eye mirrors." In making this finding I explicitly relied on Rosco's Revised Findings of Fact 5. Rosco now argues that the proposed Finding of Facts submitted by Rosco counsel never became part of the pre-trial order,[10] and argues that the 150,000 number was a typographical error. Rosco requests that I reconsider this factual finding as the only evidence submitted at trial concerning the number of mirrors sold was testimony by Rosco Owner and Vice President of Finance, Daniel Englander, that 90,000 mirrors were sold. Trial Tr. 479, March 9, 2000. This evidence was undisputed at trial and in fact was relied on by Mirror Lite in the "lost profits" section of its

---

[10] "Rule 16 (of the Federal Rules of Civil Procedure) indicates that only admissions made at a pre-trial conference and incorporated in a pre-trial order are binding." Fed. R. Civ. P. Rule 16; *Taylor v. Allis-Chalmers Mfg. Co.*, 320 F. Supp. 1381, 1384 (E.D.Pa. 1969), affirmed, 436 F.2d 416 (3rd Cir. 1970). "Proposed findings submitted by counsel are no more than informal suggestions for the sole purpose of assisting the court." 7 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* §2578; *American Elastics v. U.S.*, 84 F.Supp. 198, 199 (S.D.N.Y. 1949). Thus, the proposed findings of fact have no evidentiary significance. *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F.Supp 1257,1280 (N.D. Ohio 1980) (the plaintiff has utterly failed to direct the Court's attention to any legal authority which would support [its] rather novel contention that proposed findings of fact . . . may properly serve as evidentiary admissions").

Post Trial Brief on Remaining Issues.  As there was no evidence in the record to support the fact that 150,000 Hawk Eye Mirrors were sold, it was a mistake to so find.  As the trial evidence is uncontroverted that only 90,000 mirrors were sold, I now find that 90,000 mirrors were sold and that such number should be used in the determination of damages.

Pre-Trial Damages: Reopening Discovery

Mirror Lite filed a sur-reply arguing that my consolidation of the 1996 and 1999 cases "did not allow time for either party to make any discovery or retain any experts concerning the damages issue prior to the start of the trial on March 6, 2000" and that accordingly Mirror Lite believed that the damages issue would be heard and tried later and after full discovery. Mirror Lite thus requests that both it and Rosco now be allowed to conduct full discovery on damages, if any, occurring both before and after trial.

However, Mirror Lite never moved to bifurcate the issue of damages. It did not complain that it had inadequate time to conduct discovery on the damages issue. It presented a witness on the issue of damages and briefed the issue in its post-trial submissions. Mirror Lite did not appeal my consolidation order or its obligation to try damages. Accordingly, Mirror Lite will not be permitted to reopen the damages issue at this late date.

Post-Trial Damages: Scope of Discovery

This Court's August 26, 2005 Memorandum and Order allowed Mirror Lite to conduct discovery on post-trial damages issues:

> Mirror Lite may, however, take additional discovery concerning: (1) whether and to what extent Rosco continued to sell Hawk Eye and Mini Hawk Eye mirrors after the trial; and (2) post-trial revenue, costs, and profits Rosco has earned or incurred through sale or manufacture of Hawk Eye and Mini Hawk Eye mirrors.

While Mirror Lite has been permitted to conduct discovery on post-trial revenue, costs, and profits Rosco has earned or incurred through sale or manufacture of Hawk Eye and Mini Hawk Eye Mirrors, this discovery is not intended to supplement evidence of Mirror Lite's pre-trial damages. As already stated in the August Opinion, "to the extent that Mirror Lite failed to meet this burden at trial, it will not be permitted to supplement the record to close any evidentiary gaps."

Each of Mirror Lite's interrogatories and document production requests ask for information and documents for "the period of December 31, 1996 to March 6, 2000" and "the period of March 7, 2000 to the present." The period of December 31, 1996 to March 6, 2000 is the pre-trial period. Discovery on these issues is closed and Mirror Lite will not be permitted to use discovery on post-trial damages to supplement the evidence it has already presented on pre-trial damages.

Interrogatories 1-3 and Requests for Production 1-4 request information on "mirrors" generally or on "all mirrors" without limiting their scope to Hawk Eye and Mini Hawk Eye mirrors. The discovery order specifically limited discover to issues of "post-trial revenue, costs, and profits Rosco has earned or incurred through sale or manufacture of oval Hawk Eye and Mini Hawk Eye mirrors." Thus, interrogatories and requests for production on Rosco's production, manufacture and sales of mirrors generally is beyond the scope of permissible discovery.

Rosco further argues that as some Hawk Eye and Mini Hawk Eye Mirrors have a constant radius of curvature and are thus not infringing, Mirror Lite should not be allowed any discovery as to these mirrors. In order to facilitate discovery Rosco suggests that the magistrate judge appoint an independent accountant to audit all of Rosco's books and records and provide an accounting report concerning information only on post-trial varying radii of curvature mirrors.

This solution is inadequate. Rosco is only now contending that some Hawk Eye and Mini Hawk Eye mirrors do not infringe. This may very well be the case. However, Mirror Lite is entitled to determine for itself whether or not some Hawk Eye and Mini Hawk Eye mirrors have a constant radius of curvature and thus do not infringe. An independent accountant is not qualified to investigate the mirrors and make such a determination. Thus,

Mirror Lite will be permitted to conduct its own discovery and will not be limited only to a report by an independent accountant. However, discovery of revenues and costs may be limited to those mirrors which are *prima facie* infringing.

Finally, Rosco objects that Mirror Lite's interrogatories and production requests ask for information about hardware that is nowhere recited in the claims found to be infringed such as supplier names and cost of "tripod mounting brackets" "mounting bases, "cross view arms," "mirror arms," "trigger grip bases," "goosenecks," "twist arms," and "bracket kits."[11] Rosco is correct that these components are not themselves alleged to have infringed. However, to the extent Mirror Lite will attempt to establish a "reasonable royalty rate" it may be relevant to know the full construction cost of the infringing mirrors, not just the cost of the infringing components. This will assist Mirror Lite in determining the value of the infringing components to Rosco and what part of Rosco's profit may be attributed to the infringing components. *Austral Sales Corp. v. Jamestown Metal Equipment Co.,* 45 F. Supp 360 (W.D.N.Y 1942) (calculating a reasonable royalty based on the infringer's profits). Thus, discovery on this issue is permitted.

**CONCLUSION**

---

[11] Interrogatories 10 and 11; Requests for Production 12 and 13.

For the reasons set forth above, Mirror Lite's request for a permanent injunction is granted and its amended proposed permanent injunction, excepting ¶2(b) will be entered upon resolution of the remaining damages issues. The pre-trial sale figure of 90,000 infringing mirrors is adopted. Discovery is precluded as to inquiries concerning the December 31, 1996 to March 6, 2000 period and to the extent it requests information on "all mirrors" or on "mirrors" generally.

The Clerk is directed to furnish a filed copy of the within to all parties and to the Magistrate Judge.

SO ORDERED.

Dated :   Brooklyn, New York
          September 28, 2006

                    By: /s/ Charles P. Sifton (electronically signed)
                                    United States District Judge