```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
Rosco, Inc.,

                    Plaintiff,              CV-96-5658 (CPS)

        - against -                         MEMORANDUM
                                            OPINION AND ORDER
Mirror Lite Co.,

                    Defendant.
----------------------------------------X
```

SIFTON, Senior Judge.

Plaintiff, Rosco, Inc., commenced this action, in 1996, against defendant, Mirror Lite Company, asserting claims of design patent infringement, trade dress infringement, false designation of origin, tortious interference with business relationships, misrepresentation in violation of 15 U.S.C. § 1125(a), and common law trademark infringement. In addition to damages, the complaint sought declaratory and injunctive relief pursuant to 29 U.S.C. §§ 2201 and 2202. Mirror Lite asserted a counterclaim of patent infringement in violation of 15 U.S.C. § 1125(a).

The matter was tried before the undersigned sitting without a jury between March 6 and March 10, 2000. After appeal to the Federal Circuit and remand for determination of infringement, I found that Rosco had infringed Mirror Lite's '984 patent.

The parties then filed cross motions for summary judgment as to damages. The determination of damages included the issue of

whether Rosco's post trial mirrors infringed. On that issue, I granted Mirror Lite's motion for summary judgment in part, determining that two of Rosco's post trial mirrors continued to infringe, and denied Rosco's motion, finding that there was a genuine issue of fact as to whether three other Rosco post trial mirrors continued to infringe Mirror Lite's patent.

At the damages trial, I found that Mirror Lite was entitled to a reasonable royalty damages award in the amount of $397,843.25. I determined that Mirrors 1, 2, and 5 did not infringe on Mirror Lite's '984 patent, and that Mirror Lite was not entitled to future damages or enhanced damages. I granted Mirror Lite's request for an amended proposed permanent injunction, with the exception of paragraph 2(b).

Now before me are Mirror Lite's motions for prejudgment interest and for attorney fees and costs. For the reasons set forth below, Mirror Lite's motion for attorney fees is denied. Mirror Lite's motions for costs and prejudgment interest are granted. Mirror Lite is entitled to costs in the amount of $383,723.94 and prejudgment interest in the amount of $261,089.00.

## BACKGROUND

The facts of this case have been stated in prior opinions. *See, e.g., Rosco Inc. v. Mirror Lite Co.*, 506 F.Supp.2d 137 (E.D.N.Y. Aug. 6, 2007). It is unnecessary to repeat them here.

A procedural history is set forth in my most recent decision, *Rosco Inc. v. Mirror Lite Co.*, 626 F.Supp.2d 319 (E.D.N.Y. June 17, 2009).

## DISCUSSION

*Prejudgment Interest*

Mirror Lite seeks prejudgment interest, at a rate two percent above the prime rate, on its award of $397,843.25 for patent infringement by Rosco. Rosco does not object to Mirror Lite's request for prejudgment interest. However, Rosco argues that Mirror Lite should receive prejudgment interest at a rate equal to the interest rate of the three month United States Treasury Bill.

Mirror Lite argues that it should be awarded prejudgment interest at the prime rate plus two percent. Mirror Lite contends that such a rate is warranted because the damages it was awarded are wholly inadequate to compensate for ten years of infringement and as punishment for Rosco's knowing infringement of the '984 patent. Rosco's argument opposing Mirror Lite's rate request is three-fold. First, Rosco argues that Mirror Lite has misstated the purpose of prejudgment interest, and that the correct purpose is to compensate the patent owner for the use of its money during the infringing period. Second, Rosco argues that Mirror Lite has not provided any evidentiary support for its requested rate. Third, Rosco argues that Mirror Lite's request does not account for Rosco's design around.

35 U.S.C. § 284 states, "[u]pon finding for the claimant, the court shall award the claimant damages ... together with interest and costs as fixed by the court." This statute gives the court "general authority" to award prejudgment interest in patent infringement cases. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 653, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983). "[P]rejudgment interest should be awarded under § 284 absent some justification for withholding such an award." *Id.* at 657. Both the rate of prejudgment interest and the method of compounding the interest are in the Court's discretion. *Cargill, Inc. v. Sears Petroleum & Transport Corp.*, 388 F.Supp.2d 37, 81 (N.D.N.Y. Aug. 25, 2005) (internal citation omitted). "An award of interest [] serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the foregone use of the money between the time of infringement and the date of the judgment." *General Motors Corp.*, 461 U.S. at 655-56. In patent cases, because the prejudgment interest is awarded to make the patent holder whole, the interest is awarded starting from the time royalty payments would have been received, in other words, from the date of the first infringement. *Id.* Prejudgment interest is not meant to punish the infringer. *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed.Cir. 1983).

The Court "is afforded wide latitude in the selection of

interest rates, and may award interest at or above the prime rate." *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed.Cir.1991) (internal citation omitted).  Awarding prejudgment interest at the prime rate of interest "better approximates a corporate borrower's cost of funds." *U.S. Philips Corp. v. Iwasaki Elec. Co., Ltd.*, 607 F.Supp.2d 470, 483 (S.D.N.Y. Jan. 13, 2009) (citing *Lam, Inc.*, 718 F.2d at 1066 (Fed.Cir. 1983)); *see also Uniroyal*, 939 F.2d at 1545.  Mirror Lite has not submitted any evidence of the rate at which it borrows money.  However, "it is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate." *Uniroyal*, 939 F.2d at 1545.  Yet, in order for a district court to set prejudgment interest at a rate higher than the prime rate, the patentee must "affirmatively demonstrate that a higher rate should be used." *Lam, Inc.*, 718 F.2d at 1066 (internal citations omitted).  Mirror Lite has not made such a demonstration.[1]  And, though Rosco argues that I take their design around efforts into account in setting the prejudgment interest rate, "the merits of the infringer's challenges to the patent are immaterial in determining the amount

---

[1] Mirror Lite cites 2 cases (and mentions a third case without any citation or docket number) in which patentees have received prejudgment interest at a rate above the prime rate.  In the first, *CVI/Beta Ventures, Inc. v. Tura LP*, the rate of one percent above the prime rate was awarded based upon "uncontroverted expert testimony" that the patentee would have been required to borrow money at the higher rate.  905 F.Supp. 1171, 1203 (E.D.N.Y. Nov. 13, 1995) (reversed on other grounds).  In the second case, *Pentech Int'l, Inc. v. Hayduchok*, the Court offered no explanation as to why it chose to award prejudgment interest at a rate of one percent above the prime rate (the patentee requested a rate of three percent above the prime rate).  931 F.Supp. 1167, 1177 (S.D.N.Y. Jul. 30, 1996).

of prejudgment interest."[2] *Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969, (Fed.Cir. 1986).

I will therefore award Mirror Lite prejudgment interest at the prime rate from the date of first infringement. The prejudgment interest will be compounded quarterly so as to best approximate when Mirror Lite would have received the royalty payments from Rosco. Mirror Lite is awarded $261,089.00 in prejudgment interest.[3]

***Costs***

35 U.S.C. § 284 states, "[u]pon finding for the claimant the court shall award the claimant damages ... together with interest and costs as fixed by the court." Mirror Lite requests $383,723.94 in costs and expenses. Rosco only objects to Mirror Lite recovering $121,931.34, the cost of its damage expert. Rosco argues that it should not be responsible for Chase's fees because this Court determined that Chase's damage theories and

---

[2] Rosco's design around efforts were taken into account in my previous opinion in this case. There, I used the availability of a design around in the hypothetical reasonable royalty negotiations and in the calculation of a reasonable royalty rate. *See Rosco Inc., v. Mirror Lite Co.*, 626 F.Supp.2d 319 (E.D.N.Y. Jun. 17, 2009).

[3] Prejudgment interest was calculated by Mirror Lite's expert, Chase. Mirror Lite's Mot. Prejudgment Interest, Ex. 1. Rosco did not object to any of Chase's interest calculations. This revised amount is based upon Chase's calculations, but includes the period from July 1, 2009 to September 30, 2009 (third quarter of 2009). The average prime interest rate for the third quarter of 2009 is 3.25% (this rate has been effective since December 18, 2008), making the quarterly interest rate 0.81%. The quarterly interest for this period can be found by multiplying the beginning balance for the period, $653,638.00 by the quarterly interest rate, 0.81%, which adds $5,294.00 in interest to the balance. $653,638 * 0.81% = $5,294. The total interest is found by adding up the interest accrued each quarter from the date of first infringement for a total of $261,089.

calculations were flawed and awarded Mirror Lite less than the amount it was seeking. Rosco argues that other courts have denied reimbursement for expert fees where the expert testimony was largely excluded and stricken during trial. *Cornell University v. Hewlett-Packard Co.*, No. 01-CV-1974, 2009 WL 1405208 at *3 (N.D.N.Y. May 15, 2009).

Rosco's arguments are unpersuasive. In the *Cornell* case, the expert's "testimony was largely excluded and stricken during trial ... [and the expert] continued to assert a damage theory in direct conflict with the court's instructions." *Id*. This is distinguishable from the instant matter in which I considered all the information prepared by Chase and used his work in order to determine the appropriate damage award. His testimony was not excluded or stricken and he did not assert a damage theory in conflict with my instructions. Chase prepared information for damages using methods of damage calculation commonly used in patent law. Although parts of Chase's analysis were flawed, and I did not agree with Chase that Mirror Lite was entitled to lost profits, the reasonable royalty awarded was based, in part, on Chase's work.

Rosco's other argument is that Mirror Lite should not be reimbursed for Chase's fees because it received an award substantially less than what it sought. The amount of costs that can be recovered by a prevailing party is not related to the amount damages awarded for infringement. The Federal Circuit has rejected this argument, noting "there is no rule requiring courts

to apportion costs according to the relative success of the parties." *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1348 (Fed.Cir. 2006). In this case I found in favor of Mirror Lite and awarded it $397,843.25 in damages. Mirror Lite is granted its costs, in full, in the amount of $383,723.94.

***Attorney Fees***

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Awarding attorney fees to a prevailing party in a patent case is a two step process. First, the court must make the threshold determination that the case is "exceptional," then the court can decide whether to award attorney fees. *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1376 (Fed.Cir. 2001); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed.Cir. 1996); *Machinery Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 471 (Fed.Cir. 1985). In determining whether a case is exceptional, courts have considered whether, "1) the infringing conduct was willful or intentional; 2) the losing party engaged in inequitable conduct before the Patent and Trademark Office; 3) offensive litigation tactics, including vexatious or unjustified litigation or frivolous filings, were employed; and 4) the losing party litigated in bad faith." *Cargill, Inc. v. Sears Petroleum & Transport Corp.*, 388 F.Supp.2d 37, 76 (N.D.N.Y. Aug. 25, 2005). Merely prevailing in a patent case is not enough to justify an award of attorney fees. *Machinery Corp.,* 774 F.2d at 471. "In

assessing whether a case qualifies as exceptional, the district court must look at the totality of the circumstances." *Cargill,* 388 F.Supp.2d at 76. An "exceptional" case must be proven with clear and convincing evidence, though the evidence can be either direct or circumstantial. *Brasseler,* 267 F.3d 1370.

Mirror Lite argues that this case is, in fact, an exceptional case and offers nine arguments in support of this contention. Mirror Lite contends that this case is exceptional and that I should award attorney fees because: (1) Rosco knew it infringed the '984 patent from the beginning; (2) none of Rosco's positions in the litigation were successful; (3) Rosco initiated the 1999 action in bad faith; (4) Rosco's bad faith change of position on infringement; (5) Rosco's two litigations *in toto* constitute frivolous and harassing conduct; (6) Rosco engaged in bad faith tactics in the '984 reexamination proceeding; (7) Rosco failed to notify the trade or customers concerning its change in manufacturing processes; (8) Rosco caused undue delays by refusing to produce discovery; and (9) Rosco altered evidence. I will address each argument. Looking at the conduct of Rosco throughout this matter, I find is no basis on which to conclude that this is an "exceptional" case. None of these circumstances, whether considered separately or in combination, justifies classifying it as "exceptional" for the purpose of awarding attorneys fees.

> *(1) Rosco knew it infringed the '984 patent from the beginning*

Mirror Lite argues that Rosco knew it was infringing the '984 patent. Mirror Lite offers no evidence that Rosco knew it was infringing the '984 patent. Once this matter began, Rosco sold infringing mirrors only during the time I found that Rosco was the valid patent holder and Mirror Lite was the infringer. *See Rosco Inc., v. Mirror Lite Co.*, 626 F.Supp.2d 319, 346 (E.D.N.Y. Jun. 17, 2009). Rosco stopped selling infringing mirrors prior to my decision that it was the infringer, and Mirror Lite the valid patentee. *Id.*

*(2) None of Rosco's litigation positions were successful*

Mirror Lite argues that although Rosco initiated the action, Rosco's claims and litigation positions were all either dismissed or unsuccessful. Rosco did not prevail as the valid patentee in this case, but that is not the same as stating, as Mirror Lite does, that all of Rosco's litigation positions were unsuccessful. Rosco was successful in proving that it manufactured non-infringing alternatives prior to my determination that Mirror Lite was the valid patentee. Merely losing a case, however, does not mean that a party was so unjustified in filing a patent suit as to call the case "exceptional." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1339 (Fed.Cir. 2009)(reversing the district court's finding of exceptionality in a patent case where the finding was based on infringer's assertion of an unsuccessful defense). Rosco "should not [] be sanctioned for merely raising [a defense], absent a finding of 'vexatious or unjustified

litigation,' 'frivolous suit,' or other type of 'bad faith.'" *Id.* (*citing Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1387 (Fed.Cir.2008)).

*(3) Rosco initiated the 1999 action in bad faith*

Mirror Lite contends that Rosco filed the instant action in the Eastern District of New York an effort to delay proceedings. Mirror Lite contends that it was about to file an action in Michigan, when it called Rosco's counsel to see if he would accept service. Mirror Lite claims that Rosco's counsel said he would have to check with his client before accepting service. Mirror Lite states that instead of agreeing to accepting service, Rosco's counsel filed the instant motion in the Eastern District of New York. There is no evidence showing that filing this action in the Eastern District of New York was meant to make this matter take longer to resolve here than in Michigan.

*(4) Rosco's bad faith change of position on infringement*

Mirror Lite contends that Rosco changed its position on infringement in bad faith in order to delay resolution of this matter. Mirror Lite neglects to mention that it, too, changed its position on infringement. As I stated in my earlier opinion,

> "[a]s a result of the complicated procedural history of this case, both parties now adopt positions contrary to those they took at trial. Mirror Lite, seeking to avoid invalidation of its patent by anticipation, argued at trial that Rosco's Exhibit 110 was different from its '984 patent because Rosco's mirror did not contain a reflective outer surface and a non-reflective rear surface and because Rosco's mirror exhibited a constant radius of curvature.[4]

---

[4] *See, e.g.*, Mirror Lite Post-Trial Memo. at 21-22.

>Now Mirror Lite contends the opposite -- that Rosco's sale of Exhibit 110 infringed on the '984 patent. Similarly, Rosco argued at trial that its mirror, Exhibit 110, embodied all the claims of Mirror Lite's '984 patent, and thereby invalidated it.[5] Now Rosco reverses position and contends that Exhibit 110 is distinct from patent '984 because it does not contain a reflective exterior."

Docket Entry 186, Aug. 26, 2005, Mem. Op. Order at 10. There is, however, no evidence that either party changed its position in bad faith. Rather, the parties changed their positions on infringement in order to preserve their patents, following a decision by the Federal Circuit in this case.

*(5) Rosco's two litigations constitute frivolous and harassing conduct*

Mirror Lite argues that this case is "exceptional" because Rosco was unsuccessful in two cases against Mirror Lite (the instant matter and litigation over Rosco's design patent 346,357). There is a history of contentious litigation between these two companies, presumably because they are direct competitors in a two-supplier market. *See Rosco*, 626 F.Supp.2d at 331. Mirror Lite's arguments here, however, repeat the arguments it made earlier, namely that Rosco knew it was infringing, should not have brought this suit and add that Rosco should have known that Mirror Lite did not infringe the design patent. Mirror Lite contends that Rosco knew or should have

---

[5] For example, Rosco stated in its post-trial memo that "Mirror Lite's '984 patent is invalid since prior to 'the invention' thereof by Messrs. Schmidt et al., the invention described in the claims of the '984 Patent was made by Rosco in this country . . . ." (Rosco Post-Trial Memo. 57.)

known that both actions were baseless. No such finding was made either matter. Neither case was baseless. Trials were held in both the design patent litigation and the instant matter to determine the validity of the patent and infringement. As I stated earlier, losing a case does not mean that a party was so unjustified in filing a patent suit as to call the case "exceptional." *DePuy Spine*, 567 F.3d at 1339. There was also no finding that Rosco filed or litigated the design patent in bad faith.

*(6) Rosco engaged in bad faith tactics in the '984 reexamination proceeding*

Mirror Lite contends that Rosco fraudulently misled the patent office when in its ex parte request for reexamination of the '984 patent. Mirror Lite argues that Rosco asserted that one of its own catalogs constituted prior art to the '984 patent, and that Rosco submitted a false translation of a Japanese reference. Mirror Lite states that these were material misrepresentations and the basis for the United States Patent and Trademark office granting the reexamination.

In opposition, Rosco argues that Mirror Lite's request to have Rosco pay for attorney fees related to the reexamination is legally improper. Mirror Lite, however, is not seeking reimbursement for its attorney fees generated during the reexamination proceeding. Rather, Mirror Lite is using Rosco's actions during the course of reexamination as evidence of, "inequitable conduct before the Patent and Trademark Office," to

have this case deemed "exceptional," for the purpose of recovering attorney fees for the instant action. *Cargill*, 388 F.Supp.2d at 76.

*The Rosco Catalog*

Mirror Lite argues that Rosco submitted one of its own catalogs as prior art to the United States Patent and Trademark Office when it requested the ex-parte reexamination of the '984 patent, and that the submission of the catalog was improper because Rosco knew that the catalog was not prior art. Mirror Lite, however, offers no records of the re-examination proceeding or any other proof that Rosco knew the catalog was not prior art.

*The Japanese Translation*

Mirror Lite argues that Rosco purposely submitted an inaccurate translation of a Japanese reference in its attempt to invalidate the '984 patent, while Rosco argues that Mirror Lite submitted an inaccurate translation of the Japanese reference in order to keep the United States Patent and Trademark Office from invalidating its patent. Each party also submitted additional evidence in support of its translation of the Japanese patent. The additional submissions include affirmations by attorneys, translators and even a Japanese - English dictionary.

The relevant question, here, is whether Rosco submitted an incorrect translation of the Japanese patent in bad faith. Mirror Lite has submitted no evidence of bad faith on Rosco's

part.⁶

*(7) Rosco failed to notify the trade or customers concerning its change in manufacturing processes*

Mirror Lite's contention that Rosco failed to notify the trade or customers concerning its change in manufacturing processes is contrary to my findings in this case. Mirror Lite asserts that Rosco should have informed its customers in 2001 that it used a different manufacturing process because its mirrors were not "in principal as safe for school children [as] the first generation of mirrors that Rosco had been promoting and selling." Mirror Lite Mot. Att'y Fees and Expenses, June 20, 2009, p 9. Mirror Lite's argument that a smaller mirror with a smaller field of view may not be as safe as a mirror that offers a wider field of view may be correct. However, as discussed in my previous opinion, FMVSS 111 sets the standard for the mirror at issue in this case, and Rosco's mirrors met those standards. *Rosco*, 626 F.Supp.2d at 331. I further determined that Rosco notified its customers that its mirror design changed in 2005, at the time when I determined that Mirror Lite was the valid patentee. *Id.*, at 332.

*(8) Rosco caused undue delays by refusing to produce discovery*

Mirror Lite contends that the fact that it had to file a motion to compel discovery after two failed attempts at

---

⁶ Rather, Rosco contacted Mirror Lite about this very issue in an effort to determine whose translation was correct. Rosco Opp'n, Aug. 6, 2009, Ex. 1, Kellar Decl. Ex. B, Aug. 22, 2008 letter from Keller to Artz.

-15-

interrogatories and document requests illustrates Rosco's bad faith litigation of this matter. This is not an accurate version of the event surrounding Mirror Lite's motion to compel. A more accurate version of events surrounding this motion can be found in Mirror Lite's Motion to Compel Further Responses to Discovery Requests Concerning Damages, filed June 23, 2006. In its motion, Mirror Lite does not argue that Rosco never responded to its requests, rather, Mirror Lite states,

> "[In Mirror Lite's first set of interrogatories and document requests,] Rosco objected to the first half of all the interrogatories and document requests on the ground that they related to the pre-trial period. Rosco also objected to all but a few of the second half of the discovery requests on several grounds...Mirror Lite's second set of interrogatories and document requests were more detailed...Rosco again objected to providing any additional data concerning the pre-trial period, and also continued with its litany of objections concerning post-trial discovery."

Mirror Lite's Mot. Compel Resp. Disc. Req. Concerning Damages, Jun. 23, 2006, p 5.

So, according to Mirror Lite, Rosco did respond to Mirror Lite's interrogatories and document requests, but Rosco did not agree with the scope of the requests and therefore decline to furnish any contested information until the issue was addressed by either myself or the magistrate judge. I addressed this issue on page 26 of my Memorandum Opinion and Order of August 26, 2005. I declined to allow any additional discovery relating to the pretrial period, limiting discovery to, "1) whether and to what extent Rosco continued to sell Hawk Eye and Mini Hawk Eye mirrors after the trial; and 2) post-trial revenue, costs, and profits

Rosco has earned or incurred through sale or manufacture of Hawk Eye and Mini Hawk Eye mirrors." I held that while Mirror Lite was entitled to additional discovery, it would be limited to the post trial period. Genuinely contesting the scope of discovery is not bad faith litigation.

*(9) Rosco altered evidence*

Mirror Lite contends that Rosco altered evidence. This issue concerns a mirror placed into evidence by Rosco at the trial before me in 2000, where Rosco simply stated that the mirror was made on a certain date. When the case was on appeal before the Federal Circuit, Rosco presented pictures of the inside of the mirror which showed that it was manufactured in 1992. The date was made with an ink stamp, that appeared smeared. Mirror Lite "believes that the only plausible explanation" for the smeared ink was that the mirror was altered after the infringement trial in 2000. Mirror Lite Mot. Att'y Fees and Expenses, p 11. Mirror Lite argued this theory of evidence tampering before the Federal Circuit, but the Circuit did not address the issue. There is no evidence, other than Mirror Lite's supposition, that Rosco tampered with the mirror in question.


## CONCLUSION

For the reasons set forth above, I conclude that Mirror Lite's motion for attorney fees is denied. Mirror Lite's motions for costs and prejudgment interest are granted. Mirror Lite is entitled to costs in the amount of $383,723.94 and prejudgment interest in the amount of $261,089.00.

The Clerk is directed to furnish a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.

Dated : Brooklyn, New York
October 26, 2009

By: /s/ Charles P. Sifton (electronically signed)
United States District Judge